# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**CHARLES S. FORD,**

                **Plaintiff,**

**-vs-**                                              **Case No.  6:06-cv-853-Orl-DAB**

**COMMISSIONER OF SOCIAL
SECURITY,**

                **Defendant.**

_____

## MEMORANDUM OPINION AND ORDER

This cause came on for consideration without oral argument on review of the Commissioner's denial of Plaintiff's application for Social Security disability benefits and Supplemental Security Income.  For the reasons set forth herein, the Commissioner's decision is **AFFIRMED.**

### PROCEDURAL HISTORY

Plaintiff filed applications for Disability Insurance Benefits on April 23, 2003 (R. 65-67) and for Supplemental Security Income on May 2, 2003 (R. 189-90), alleging disability from November 30, 2002, due to degenerative joint disease of the right knee with osteoarthritis (R. 65, 72).  The claims were denied initially, and upon reconsideration (R. 30-31; 194-96; 38-40).  Plaintiff requested and received a hearing before an Administrative Law Judge (herein "the ALJ") (R. 206-228), and an unfavorable decision was issued on December 29, 2005 (R. 9-25).  The Appeals Council denied Plaintiff's request for review (R. 4-7), and this action timely followed (Doc. No. 1).

### SUMMARY OF EVIDENCE

The evidence before the ALJ is set forth in his decision.  By way of summary, Plaintiff was 46 years old at the hearing, and 47 at the time of the ALJ's decision.[1]  He stated in application that

---

[1]Plaintiff erroneously stated his age as 47 at the hearing (R. 210), and the ALJ erroneously stated Plaintiff's age as 46 in the decision (R. 13).  As Plaintiff was born on September 22, 1958 (R. 65), he was 46 at the February 2005 hearing, and 47 at the time of the December 2005 decision.

he had a tenth grade education (R. 76), but testified at hearing that he had an eighth grade education (R. 210).  Past work experience includes various jobs in construction and as an irrigation technician (R. 87-91, 212).  Plaintiff asserts that he became disabled on November 30, 2002, due to severe pain in his knee, and testified that he had not done any full or part time work since that time (R. 211).

On December 10, 2002, Plaintiff underwent an MRI of the right knee, following complaints of pain (R. 125-126).  The MRI showed advanced osteoarthritis in the medial compartment of the right knee, meniscal degeneration and fraying of the posterior horn of the medial meniscus, and moderate osteoarthritis in the lateral articular facet of the patella.  Ligaments were intact, the patellar and femoral tendons were intact, and the medial and lateral ligament complexes were intact as well.

Plaintiff presented to Dr. Reginald Bowden on January 9, 2003, complaining of knee pain (R. 120). Dr. Bowden diagnosed arthritis and referred Plaintiff to an orthopedic clinic.  Plaintiff was seen at Halifax Health Center on March 10, 2003 (R. 116).  He was assessed with osteoarthritis, an unloading brace was prescribed and the treatment notes indicate "? voc rehab" (R. 116).

On April 15, 2003, Plaintiff returned to Dr. Bowden for an evaluation of the right knee pain (R.111, 114).  At this appointment, Plaintiff was reportedly upset with the appointment with the orthopedic clinic because the physician indicated that he was not a candidate for surgery. Additionally, it was "recommended to apply for SSI." *Id.*.  Plan was to return to the orthopedic clinic. On April 17, 2003, Dr. Bowden completed an application for a disabled parking permit placard for Plaintiff, opining that he had a "severe limitation" in his "ability to walk due to an arthritic, neurological, or orthopedic condition." (R. 110).

On September 3, 2003, Plaintiff presented to consultative examiner Dr. Hugh Coleman, at the request of the Social Security Administration (R. 130).  Plaintiff complained of pain in his right knee increasing in intensity since December 2002.  Plaintiff reported that he had a knee brace but was able

-2-

to ambulate around the house without it.  He reported that he could walk at most for 45 minutes, and had constant pain in his knee.  *Id.*  He told Dr. Coleman that he "has been off work for 4 to 6 months now." (R. 130).  Examination revealed full range of motion of the cervical, thoracic and lumbar spine, with negative straight leg raising tests (R. 131).  During the examination of the lower extremities, Dr. Coleman found Plaintiff to have full passive range of motion in his right knee, but decreased active range of motion (R. 132).  Sensation was intact bilaterally, and Plaintiff was able to ambulate, with and without his knee brace, for greater than 30 feet in the halls (R. 132).  He had medial and joint line tenderness, medial greater than lateral, over the right knee.  Furthermore, Dr. Coleman found Plaintiff to favor his right lower extremity with ambulation, and a limping gait when walking without his brace.  No effusion or erythema was appreciated.  Plaintiff was unable to squat on his right knee, but was able to kneel on it.  Plaintiff was assessed with "[r]ight knee pain with severe degenerative joint disease, consistent with osteoarthritis;" genu varus, and a decreased active range of motion of the right knee. *Id.*

A non-examining state agency physician completed a residual functional capacity assessment review on September 17, 2003, and determined that Plaintiff could perform light work activity, with some postural and environmental limitations (R. 134-41).

Plaintiff returned to Dr. Bowden on November 13, 2003, for a follow-up on the knee pain (R. 157).  It was noted during this appointment that the pain was radiating into his ankle, and Plaintiff's compliance with medication was noted to be "poor."  Plan was to continue with the brace, and he was again referred to the orthopedic clinic.

A non-examining state agency physician opined that Plaintiff could perform light work activities, with certain postural and environmental limitations, on December 9, 2003 (R. 134-40).

Plaintiff returned to Dr. Bowden on December 30, 2003, and reported that Tylenol was helping "a bit." (R. 155). Medication compliance was deemed "fair"; Plaintiff was assessed with right knee pain and plan was to continue the Tylenol and orthopedic referral.

Plaintiff presented to the orthopedic clinic on February 9, 2004, to be evaluated by Dr. James M. Bryan (R. 154). Dr. Bryan noted a varus malalignment and severe right knee pain.  Dr. Bryan ordered x-rays and plan was to consider surgery.  *Id.*  X-rays taken on February 17, 2004, revealed advanced osteoarthritis of the medial joint compartment of the right knee (R.151-53).

Plaintiff returned to Dr. Bryan's office on March 31, 2004 (R. 184-87).  Plaintiff reported that he had "worked out at a gym regularly" and indicated that he had constant pain, "like an abscessed tooth" in the medial aspect of his right knee.  During the examination, Plaintiff had marked varus alignment of the right knee and a limited range of motion in the right knee (R. 186).  Ligaments were stable, distal pulses were intact, as were motor, sensory and neurological examination.  *Id.*  Dr. Bryan assessed right knee 13 degrees varus malalignment and medial compartment arthrosis, and recommended arthroscopy and high tibial osteotomy with allograft and medial plating. Plaintiff agreed.

On April 29, 2004, Plaintiff underwent a right knee diagnostic arthroscopy, partial medial meniscectomy with chrondroplasty of the trochlear region and medial tibial open-wedge osteotomy at Halifax Medical Center (R.181-83).

On May 6, 2004, Plaintiff presented with redness along the medial incision (R. 180). The doctor examined him and concluded that he was suffering from cellulitis and antibiotics were prescribed.  On May 11, 2004, Plaintiff returned to the orthopedic clinic, with his knee improved on the antibiotics (R. 178).  X-rays showed very good alignment overall.

On June 15, 2004, Dr. Bryan indicated that Plaintiff was progressing nicely, with a well healed incision and good alignment of the limb (R. 176). He was to continue with home exercise.

On July 20, 2004 visit, it was noted that Plaintiff was doing 50% weight bearing using 1 crutch and was "working about 4 hours a day." (R. 174). Physical examination showed good alignment, with no signs of infection, but x-rays noted that the knee was without significant incorporation of the bone graft. *Id.* It was noted that Plaintiff continued to require narcotic pain medication, and Dr. Bryan assessed delayed healing. Plan was to return to using two crutches, and only do 25% weight bearing. Thereafter, notes on August 31, 2004 revealed Plaintiff was still having pain, especially at night (R. 172). Plaintiff was assessed with making "slow improvement." It was noted that he had tried to go back to work as a supervisor but had too much pain. Dr. Bryan recommended an EBI bone stimulator to expedite healing.

On October 1, 2004, Dr. Bryan completed a work status note that stated that Plaintiff was unable to work for three more months (R.171).

On November 2, 2004, Dr. Bryan indicated that Plaintiff was doing well despite some medical non-compliance with respect to the bone stimulator (R. 169). Physical examination showed good range of motion of the knee, 0/10/125 degrees, and no effusion. Also, alignment of the limb was good. Dr. Bryan opined that Plaintiff could get off all narcotic medication and "advance his activities as tolerated." *Id.* Dr. Bryan opined that he expected to see decreasing pain in the knee and further solidification of the osteotomy site.

Dr. Bryan completed a Physical RFC Questionnaire on November 8, 2004, indicating that Plaintiff could sit for no longer than 1 hour at one time; stand for 30 to 45 minutes at one time; sit for about four hours and stand or walk about 4 hours in an 8-hour workday; required a sit, stand, walk

option at will; can frequently lift less than 10 pounds, occasionally lift 10 pounds, rarely lift 20 pounds, and never lift 50 pounds (R. 166-68).

Plaintiff appeared at hearing and testified, as did a vocational expert.  Plaintiff noted that he was unable to read or write well; that he last worked 3-4 years ago (R. 211); and that he was unable to work due to 24/7 pain (R. 213).  He testified that he could walk for 15-20 minutes only, and could not kneel or squat (R. 214).  He very rarely cooks, does almost no housework (R. 216), no yard work, no fishing or hunting (R. 217) and drives very rarely.  He does not go to grocery stores or the movies or out to see friends (R. 218-19).  He describes his daily activities as "pretty much nothing." (R. 219).

The vocational expert testified that a hypothetical person of Plaintiff's age, education and work experience, who retains the capacity to lift 20 pounds occasionally and 10 pounds frequently, can stand four of eight hours and walk four of eight hours - at 45 minutes at a time; can sit for six of eight hours, an hour at a time and would need a sit/stand option; can never push or pull in the lower right extremity, can never use ropes, ladders, nor kneel and could occasionally perform other postural positions, and can perform simple one two step functions, could not do Plaintiff's past relevant work, but could perform other work in the national economy (R. 221-222).  The VE also testified that if this individual had unscheduled breaks for variable amounts of time throughout the day consistently, that there would not be anything that person could do on a sustained basis (R. 226).

The ALJ reviewed the evidence and found that Plaintiff retained the residual functional capacity ("RFC") to perform a significant range of light work (R. 24,  Findings 6, 11) and, relying on the testimony of the VE, was therefore not disabled.  In so finding, the ALJ rejected Plaintiff's allegations of disabling limitations as not credible.

### STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).   The Commissioner's findings of fact are conclusive if supported by substantial evidence.   42 U.S.C. § 405(g).   Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.   *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.   *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).   The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.   *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

### ISSUES AND ANALYSIS

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § § 416(I), 423(d)(1); 20 C.F.R. § 404.1505.   The impairment must be severe, making the

claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. § § 404.1505-404.1511.

Plaintiff asserts that the ALJ erred in failing to credit the opinion of the treating physician; in failing to properly evaluate Plaintiff's allegations of pain; and in determining that Plaintiff was not totally credible.

### Treating Physician

Unfortunately, the ALJ's decision is not a model of clarity with respect to indicating the weight given to the opinions of Plaintiff's treating physicians (*See* R. 21).  Nonetheless, it appears that the ALJ gave "controlling weight" to Dr. Bryan's opinion "regarding the claimant's ability to sit, stand, walk and postural limitations of 20/10 pounds." (R. 21).  It also appears that the ALJ discounted that very same opinion, to the extent the opinion set forth other restrictions, such as the requirement to take unscheduled breaks, be absent from the workplace for at least one day per month, and the opinion that Plaintiff would have pain interfere with his concentration (R. 21).  The ALJ ultimately concluded that he would "give weight" to Dr. Bryan's opinion, to the extent it was consistent with the opinions of the non-examining state agency physicians that Plaintiff could perform a significant, but not full range of light work[2] activity (R. 21, 22).

Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise.  *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991); 20 C.F.R. § 404.1527(d).  If a treating physician's opinion on the nature and severity of a claimant's impairments is well-

---

[2]Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. 20 C.F.R. §§ 404.1567(b), 416.967(b).

supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. *See Edwards*, 937 F.2d 580 (ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements.)

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987). When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship; 3) the medical evidence supporting the opinion; 4) consistency with the record as a whole; 5) specialization in the medical issues at issue; 6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984); *see also* 20 C.F.R. § 404.1527(d)(2).

Here, the ALJ evaluated the conclusory statements with respect to restrictions other than issues as to sitting and standing and discounted them, as being "inconsistent with the examination findings after the claimant underwent surgery" (R. 21). The ALJ noted that Plaintiff reported working out at the gym; x-rays of the knee showed good alignment; examination showed good range of motion of the knee; and Plaintiff reported doing well with the bone stimulator and on his medication. *Id.* These findings, as noted above, are supported by substantial record evidence, and as such, must be affirmed.

-9-

Plaintiff correctly contends that the record includes numerous documents which support a contrary conclusion.  At issue, however, is not whether there is any evidence, or even substantial evidence, that supports a contrary conclusion; as set forth above, the issue is whether *the decision reached by the ALJ* is adequately supported.  While the record does reflect some evidence of disability, it is the task of the ALJ, not the Court, to weigh that evidence against the other evidence.  While there is evidence of Plaintiff's knee impairment being debilitating early in the medical record, the ALJ correctly notes that Plaintiff's condition significantly improved after surgery.  As noted above, Plaintiff's last visit of record with Dr. Bryan indicated that he was doing well, with good range of motion of the knee, no effusion and  alignment of the limb was good (R. 169).  Dr. Bryan opined that Plaintiff could get off all narcotic medication and "advance his activities as tolerated." *Id.*  It was expected that the pain in the knee would decrease and the osteotomy site would further solidify.  Moreover, even prior to the surgery, the ALJ cites to record evidence that supports a finding that Plaintiff's knee impairment was not disabling.[3]  Taking the record as a whole, the Court finds no error in the ALJ's discounting of Dr. Bryan's most severe restrictions as being inconsistent with the most recent examination and opinions.

### Pain and Credibility

Plaintiff next asserts that the ALJ erred in evaluating Plaintiff's allegations of pain and his credibility.  Pain is a non-exertional impairment.  *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).  The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. § 404.1528.  In determining whether the medical signs and

---

[3]The ALJ cites to the opinions of the non-examining state agency physicians, as well as other evidence indicating that Plaintiff worked after his date of onset.

laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Foote*, 67 F.3d at 1560, *quoting Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). Pain alone can be disabling, even when its existence is unsupported by objective evidence, *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

Here, Plaintiff contends that "substantial evidence shows the clamant suffered from pain caused by a severe and significant knee impairment that could reasonably be expected to cause the alleged pain" and thus, Plaintiff met the pain standard (Doc. No. 18 at 14). This argument, however, misconstrues the nature of the ALJ's findings. The ALJ *did* find Plaintiff's degenerative joint disease of the right knee to be a severe impairment, just not a *disabling* one. Specifically, the ALJ found that the impairment was "not as limiting as [Plaintiff] alleges." (R. 14). In so determining , the ALJ discredited Plaintiff's allegations of disabling limitations. At issue is whether this finding is supported by substantial evidence.

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. As a matter of law, the failure to articulate the reasons for discrediting subjective pain testimony requires that the

testimony be accepted as true. *Foote*, 67 F.3d at 1561-62; *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

Here, the ALJ set forth numerous reasons supporting this determination.  The ALJ pointed out inconsistencies between Plaintiff's testimony at hearing, his statements to his physicians, and the medical evidence of record.  The ALJ noted, for example, that it appeared that Plaintiff worked (albeit not at a gainful activity level) after his alleged onset date despite testimony that he had not; that he told the examiner that he could walk without the brace around the house although he testified that he could not; that he stated to a physician that he worked out a gym regularly; and pointed out discrepancies between prior reports of daily activities and the more significantly limiting hearing testimony (R. 18).  These discrepancies are supported by substantial evidence of record, and the credibility determination must therefore be affirmed.

In support of his contention that he met the pain standard and that the credibility determination was wrong, Plaintiff notes that he was on powerful narcotics, that he frequently complained of pain to his physicians, and that no physician claimed he was a malingerer.  He notes that activities of short duration, such as housework and light shopping, do not disqualify one from a finding of disability.  Some of the activities Plaintiff engaged in, such as working and going to the gym, are not "everyday activities of short duration" but go to the very essence of what Plaintiff is physically capable of doing.  Moreover, the ALJ did not discredit Plaintiff's allegations because Plaintiff engaged in light activities; rather, it was because he was inconsistent about his reports of those activities.  As the credibility finding is amply supported, the Court finds no error.

### CONCLUSION

The decision of the Commissioner is supported by substantial evidence and was made in accordance with proper legal standards.  It is therefore **AFFIRMED.**   The Clerk is directed to enter judgment accordingly and to close the file.

**DONE** and **ORDERED** in Orlando, Florida on August 6, 2007.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record

-13-